MHN

FILED
8-27-2008
AUG 27 2008
JUDGE JOAN H. LEFKOW
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
) No. 08 CR 349
vs. ) Judge Joan Humphrey Lefkow
)
JULIUS MACKLIN, )
also known as "Julius Heart" )

**PLEA AGREEMENT**

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JULIUS MACKLIN, also known as "Julius Heart," and his attorney, BETH GAUS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

**Charges in This Case**

2. The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts One through Three), and using a means of identification of another person with the intent to commit a violation of federal law, in violation of Title 18, United States Code, Section 1028(a)(7) (Counts Four and Five).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charge to Which Defendant is Pleading Guilty**

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

**Factual Basis**

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline §1B1.3:

On or about December 30, 2005, at Itasca and elsewhere, in the Northern District of Illinois, Eastern Division, defendant, for the purpose of executing a wire fraud scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from Irvine, California, to New York, New York, certain signs, sounds and signals, namely, a wire transfer of funds in the amount of approximately $24,686.84 for a mortgage loan to purchase property located at 1950 E. Lawrence Street, Chicago Heights, Illinois, which funds constituted mortgage loan proceeds obtained from New Century Mortgage Corporation ("New Century") and which were deposited into an account in the name of First American Title at JPM Chase in New York, New York, in violation of Title 18, United States Code, Section 1343.

More specifically, beginning in or about December 2005, and continuing until at least March 2007, defendant devised and participated in a scheme to defraud New Century, a residential mortgage lender, Fremont Investment and Loan ("Fremont"), a residential mortgage lender, and Household Financial Corporation ("HFC"), a financial institution (collectively referred to as the "Lenders"). The Lenders required applicants for loans to truthfully provide certain information, including the applicant's true name and true social security number. The Lenders relied upon the information provided by applicants, including their name and social security number, in determining whether to issue loans.

On or about December 30, 2005, defendant, using the alias name "Julius Heart," applied for, and subsequently obtained, a primary and secondary mortgage with New Century to purchase property located at 1950 E. Lawrence Street, Chicago Heights, Illinois. The primary mortgage was valued at approximately $100,000. The secondary mortgage was valued at approximately $25,000. In addition to using an alias name, defendant also falsely represented in the New Century loan application that his social security number was XXX-XX-1016. In fact, social security number XXX-XX-1016 was issued to Individual A, a minor who does not reside in Illinois. Defendant had no authority to use Individual A's social security number for any reason.

Prior to defendant's fraudulent purchase of the 1950 E. Lawrence Street, Chicago Heights, Illinois, property, the owner of the property participated in the Housing Authority of the County of Cook, Rent Assistance Division ("HACC") program. Specifically, the

owner rented the apartment to a tenant who qualified for HACC rental assistance. As a result, HACC paid the tenant's rent directly to the owner. On or about January 23, 2006, shortly after defendant purchased the Chicago Heights property through the use of false information, defendant completed, signed and submitted forms to transfer the HACC payment vouchers from the previous owner to defendant. In so doing, defendant falsely verified that his name was "Julius Heart" and that his social security number was XXX-XX-1016. Beginning on or about March 1, 2006, and continuing until at least December 1, 2006, HACC wired monthly rental payments in the amount of $1,012.00 to defendant's bank account. In total, defendant fraudulently received approximately $12,144.00 from HACC.

On or about January 6, 2006, defendant, using the alias name "Julius Heart," applied for a primary and secondary mortgage with Fremont to purchase property located at 24 Central Avenue, Matteson, Illinois. The primary mortgage was valued at approximately $151,200. The secondary mortgage was valued at approximately $37,800. In addition to using an alias name, defendant also falsely represented in the Fremont loan application that his social security number was XXX-XX-1016.

On or about March 21, 2007, defendant, using the alias name "Julius Heart," at the HFC Office in Matteson, Illinois, applied for, and subsequently obtained, a personal credit line account in the amount of $10,000. In addition to using an alias name, defendant also falsely represented in the HFC loan application that his social security number was XXX-XX-1016.

The mortgage loan and personal loan proceeds for the above described mortgages and personal line of credit were sent via interstate wire communications from the Lender's bank account to the title company's bank account for the mortgage loans, and to defendant's bank account for the personal loan through the line of credit.

7. Defendant, for purposes of computing his sentence under Guideline §lBl.2, stipulates to having committed the following additional offense(s):

Defendant admits that beginning on or about October 18, 2007, and continuing until on or about May 9, 2008, defendant used unauthorized access devices of Victims A through F, and by such conducted obtained things of value aggregating $1,000 or more, in violation of Title 18, United States Code, Section 1029(a)(2). More specifically, defendant stole and the used the access devices of Victims A through G to obtain goods and money, resulting in a loss of approximately $38,984.82.

**Maximum Statutory Penalties**

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

**Sentencing Guidelines Calculations**

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree and, where noted, disagree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in Count One of the indictment is 7, pursuant to Guideline §2B1.1(a)(1);

ii. Because the loss amount resulting from the offense of conviction and relevant conduct at least exceeds $10,000, the offense level is increased by at least 4 levels , pursuant to Guideline §2B1.1(b)(1)(C);

iii. Because defendant used a means of identification unlawfully to obtain another means of identification, the offense level for the charge in Count One is increased by 2 levels, pursuant to Guideline §2B1.1(b)(10);

iv. The base offense level for the stipulated offense is 6, pursuant to Guideline §2B1.1(a)(2);

v. Because the loss amount resulting from the stipulated offense exceeds $30,000, the offense level is increased by 6 levels, pursuant to Guideline §2B1.1(b)(1)(D);

vi. Because the stipulated offense involved thefts from the person of others, the offense level is increased by 2 levels, pursuant to Guideline §2B1.1(b)(3);

vii. Because defendant knew that the identification cards were stolen from vulnerable victims, the base offense level is increased by 2, pursuant to Guideline §3A1.1(b)(I). Defendant reserves the right to disagree;

viii. Pursuant to Guideline §3D1.2(d), the offense of conviction and the stipulated offense constitute one Group because the offense level for each is determined largely on the amount of loss;

ix. Defendant acknowledges the loss amount resulting from the offense of conviction, and therefore the combined offense level and Guideline range, may increase as additional losses are realized from the fraudulent loan transactions in which defendant participated.

x. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xi. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

government and stipulated below, defendant's criminal history points equal 3 and defendant's criminal history category is II:

       i.    On or about January 30, 1998, defendant was convicted of forgery in the Circuit Court of Cook County and sentenced to two years' imprisonment. Pursuant to Guideline §4A1.1(a), defendant receives 3 points for this conviction.

       d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 13, which, when combined with the anticipated criminal history category of II,  results in an anticipated advisory Sentencing Guidelines range of 15 to 21 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.  Defendant reserves the right to argue that the anticipated offense level is 11, which, when combined with the anticipated criminal history category of II, results in an anticipated advisory Sentencing Guidelines range of 10 to 16 months' imprisonment.

       e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely.  Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline

calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

11. The government is free to recommend any sentence within the guidelines range.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, the defendant acknowledges that the offense of conviction is an offense against property and that, pursuant to Title 18, United States Code, Section 3663A(a)(1), the Court must order defendant to make restitution to the victims in an amount to be determined by the Court at the time of sentencing, minus any credit for funds repaid prior to sentencing. The defendant further agrees, pursuant to Title 18, United States Code, Section 3663A(a)(3), to the entry of an order requiring him to make restitution to victims of the stipulated offense in the amount of $38,984.82. The defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which restitution is to be paid in this case. The defendant agrees to provide full and truthful information to the court and United States Probation Officer regarding all details of his economic circumstances in order to determine the proper restitution schedule according to which the defendant may be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

14. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

**Presentence Investigation Report/Post-Sentence Supervision**

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 349.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree

unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the

sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Other Terms**

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

**Conclusion**

23. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

27. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/27/08

FOR TJF

PATRICK J. FITZGERALD
United States Attorney

JULIUS MACKLIN
Defendant

BETHANY K. BIESENTHAL
Assistant U.S. Attorney

BETH GAUS
Attorney for Defendant